Dewey D. Ringel and Lillian Ringel v. Commissioner.
Ringel v. Commissioner
Docket No. 79623.
United States Tax Court
T.C. Memo 1961-163; 1961 Tax Ct. Memo LEXIS 186; 20 T.C.M. (CCH) 817; T.C.M. (RIA) 61163; June 6, 1961
Nathan Turesky, Esq., for the petitioners. Chapman H. Belew, Jr.,esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency in income tax against the petitioners for the calendar year 1955 in the amount of $2,157.65. The only issue is whether petitioner Dewey D. Ringel's distributive share of partnership income was 50 percent, as reported by him, or 75 percent, as determined by the respondent. Findings of Fact Some of the evidence *187 and some of the facts have been stipulated and the facts stipulated are found as stipulated. Petitioners are husband and wife, and reside in Maplewood, New Jersey. They filed their joint income tax return for 1955 with the district director of internal revenue at Newark, New Jersey. On May 9, 1953, Dewey D. Ringel, hereafter referred to as petitioner, and Daniel Rinaldi formed a partnership under the name of Ringel Paper Co., to engage in the wholesale business in paper and related items. The partnership agreement recited that each partner had contributed $6,000 to the partnership's capital and that "any further capital contributions shall be equal between the partners herein." The partners agreed to divide net profits or losses equally, and each partner was entitled to "draw such weekly sum from the funds of the partnership as may be mutually agreed upon by the parties hereto from time to time, said drawings to be equal and on account of profits." During the early months of the partnership petitioner and Rinaldi worked together harmoniously. However, prior to April 1, 1954, petitioner became dissatisfied. On or about April 1, 1954, petitioner drafted, in his own handwriting, *188 a two-page document amending the partnership agreement of May 9, 1953. The partners executed the document on or about April 1, 1954, Rinaldi signing each page thereof. This document, sometimes referred to herein as the April 1, 1954, agreement, changed the original partnership agreement by amending certain specific paragraphs as follows: Page 1 This agreement is made to add to, and change the partnership agreement of May 9, 1953, between D. Rinaldi and D. Ringel. [*] 2 D. Rinaldi shall contribute capital until his share is $30,000 at which time a new agreement is to be made. [*] 5 As of April 1, 1954 the profit or losses shall be divided 25% to D. Rinaldi & 75% to D. Ringel. [*] 6 D. Rinaldi shall draw $125.00/ week & D. Ringel $175.00 against their share of profits. [*] 9 & [*] 10 [*] 11 In case of death of D. Ringel his wife & heirs shall receive the commission on all a/c he brought into the partnership for as long as these a/c are sold. If the other partner shall sell the business the worth of these a/c shall be construed as 10% of the sales for 2 years which amount shall be paid over an above other assets. [*] 13(a) See above. The above shall supersede *189 the previous agreement if at any point it conflicts with it. To be added. Dewey Ringel is to have the final say on all matters pertaining to sales. (Signed) Daniel Rinaldi Page 2 management, policy & selling expenses. D. Ringel shall be allowed to spend any money he thinks necessary for business entertainment & selling expense which shall be charged to the partnership. (Signed) Dewey D. Ringel Dewey D. Ringel (L.S.) (Signed) Daniel Rinaldi Daniel Rinaldi (L.S.) Petitioner kept the books of the partnership, and on or about April 1, 1954, changed them to reflect the division of profits on a 75-25 percentage basis. In May 1954, Rinaldi noticed the changes made by petitioner on the partnership books. Rinaldi objected to the changes, but was told by petitioner that "that is the way it is going to be - 75-25." Rinaldi contended that he and petitioner had an oral "gentleman's agreement" that the 75-25 division was to become effective only upon the death of the petitioner, that its sole purpose was to protect petitioner's family, and that such protection was necessary because of the greater capital contribution petitioner had made to the partnership. In November 1955, Rinaldi *190 refused to continue the partnership on a 75-25 percentage basis. The partners negotiated for about a week before they were able to settle their differences. On November 25, 1955, they entered into a written agreement dissolving the partnership as of that date. By the terms of the dissolution agreement, Rinaldi assigned his entire partnership interest to petitioner for $13,500. In arriving at the purchase price petitioner and his counsel contended that the April 1, 1954, agreement was valid, while Rinaldi and his counsel contended that it was invalid. The purchase price of $13,500 was a negotiated or compromise figure; it included something for good will and some amount for Rinaldi's capital account, which varied according to whether a 50-50 or a 75-25 percentage basis was used for the distribution of profits. For the year ended March 31, 1954, the partnership filed a return of income showing the distributive share of each partner on a 50-50 basis, in accordance with the original partnership agreement. This return was prepared by Victor Goldblat, a certified public accountant, in accordance with instructions from petitioner, who signed the return. For the year ended March 31, 1955, the *191 partnership filed a return of income showing petitioner's distributive share as 75 percent and Rinaldi's as 25 percent. This return was also prepared by Goldblat and was signed by petitioner. The distributive shares of the partners, as shown on this return, were in accordance with the document amending the partnership agreement as of April 1, 1954. Following the dissolution of the partnership, petitioner employed Herman Siegel as his accountant and instructed him to prepare an amended partnership return for the fiscal year ended March 31, 1955, and a final partnership return for the period April 1 to November 30, 1955. In accordance with petitioner's instructions, Siegel prepared partnership returns for these periods showing the distributive shares of the partners on a 50-50 basis, and these returns were thereafter filed with the district director at Newark, New Jersey. On the joint return of petitioners for the calendar year 1955, petitioner reported his distributive share of partnership income for the partnership year ended March 31, 1955, and the partnership period ended November 30, 1955, as $13,381.72. This sum constituted half of the partnership income reported on the amended *192 return for the partnership year ended March 31, 1955, viz., $7,297.17, plus half of the partnership income reported for the period ended November 30, 1955, viz., $6,084.55. In his determination of deficiency herein, respondent computed the total partnership income for 1955 as $28,263.44 and determined that petitioner's distributive share thereof was 75 percent, or $21,197.57. The April 1, 1954 agreement modified the original partnership agreement between petitioner and Rinaldi. Thereafter, petitioner's distributive share of the partnership net income was 75 percent. Opinion The provisions of section 704(a) and section 761(c) of the Internal Revenue Code of 1954, which are pertinent to the issue here, are set forth in the margin. [1]
*193 The record shows and we have found that the partners modified their original partnership agreement on or about April 1, 1954, which was prior to the time prescribed by law for filing the partnership's return for 1955. Under the 1954 agreement, the partnership interests became, petitioner 75 percent and Rinaldi 25 percent. No further modification of the partnership agreement occurred between April 1, 1954, and the dissolution of the partnership on November 25, 1955. No provision of the dissolution agreement indicates that petitioner's distributive share was other than the 75 percent fixed by the partners "as of April 1, 1954." No brief was filed for petitioner and our understanding of his position must be gleaned primarily from his counsel's opening statement, since the petition merely alleges that petitioner was entitled to and properly reported only 50 percent of the partnership income, and was not entitled to the 75 percent determined by respondent. [2] Petitioner's position, as stated by his counsel at the trial, seems to be that he and Rinaldi were 50-50 partners in fact and in dissolution, and that the April 1, 1954, agreement "was not lived up to or carried out by either with *194 respect to the books or that it was done in actual fact." Respondent contends that the April 1, 1954, agreement was a valid and binding agreement on the parties who executed it, that by the terms of such agreement petitioner's distributive share was changed from 50 percent to 75 percent, and that petitioner should not be heard to say that the amendment he prepared was not in fact what he intended it to be. We agree with respondent. The agreement of April 1, 1954, expressly fixed petitioner's distributive share at 75 percent. Both parties signed this agreement, Rinaldi signing each page thereof. The partnership books were changed by petitioner himself to reflect the 75-25 percentage basis. Even after Rinaldi, in May 1954, noted the changes on the books and objected thereto, they continued to operate under the April 1, 1954, amendments until the partnership's dissolution some 20 months later. The first partnership return filed after the execution of the April 1, 1954, agreement (during June 1955) showed petitioner's distributive share as 75 percent and Rinaldi's as 25 percent. Petitioner executed this partnership return which was prepared by the partnership's certified public accountant, *195 who must have had knowledge of the changes made in the partners' distributive shares since he had prepared the partnership return for the year ended March 31, 1954, on a 50-50 basis. In November 1955, petitioner was still vigorously contending that the April 1, 1954, agreement was valid and effective, as he sought to dissolve the partnership on a 75-25 percentage basis. It was only after he agreed to pay Rinaldi $13,500 for his partnership interest that petitioner began denying the validity of the April 1, 1954, agreement. This sum approximated the amount Rinaldi would have been entitled to if the partnership had been dissolved on a 50-50 basis. Petitioner's testimony on his change of viewpoint is most apt: * * * we paid him [Rinaldi] on the 50-50 basis. This was the amount he asked for. At that point, we put in an amended return. I received 50 percent of the business. It would seem silly for me to pay 75 percent of the taxes and pay him 50 percent of the business and lose both ways. In our opinion Rinaldi realized $13,500 for his partnership interest because of his bargaining ability, and not because of any modification of the April 1, 1954, agreement. We are satisfied from *196 the evidence that petitioner's willingness to pay Rinaldi a sum approximating a settlement on a 50-50 percentage basis was due to the intensity of his desire to get rid of Rinaldi as a partner; it was not due to any further modification of the partnership agreement after April 1, 1954, or to any ineffectiveness of the April 1, 1954, agreement. See and compare Estate of Harry Goldstein, 29 T.C. 931. Decision will be entered for the respondent. Footnotes
1. SEC. 704. PARTNER'S DISTRIBUTIVE SHARE. (a) Effect of Partnership Agreement. - A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this section, be determined by the partnership agreement. SEC. 761. TERMS DEFINED. * * *
(c) Partnership Agreement. - For purposes of this subchapter, a partnership agreement includes any modifications of the partnership agreement made prior to, or at, the time prescribed by law for the filing of the partnership return for the taxable year (not including extensions) which are agreed to by all the partners, or which are adopted in such other manner as may be provided by the partnership agreement.↩
2. Petitioner's failure to set forth clear and concise statements of fact upon which he relies to sustain his allegations of error violates Rule 7(c)(4)(B)(5) of the Court's Rules of Practice.↩